NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARIBEL VEGA<br><br>　　　　Plaintiff,<br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　Defendant. | Civil Action No.: 19-11399<br><br>**OPINION** |

**CECCHI, District Judge.**

**I.    INTRODUCTION**

This matter comes before the Court on the appeal of Plaintiff Maribel Vega ("Plaintiff"), seeking review of a final decision of the Commissioner of Social Security ("Defendant") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act ("SSA").  *See* 42 U.S.C. §§ 401-34, 1382-83f.  For the reasons set forth below, the Court will **AFFIRM** the decision of the Administrative Law Judge ("ALJ").

**II.   BACKGROUND**

**A.  Procedural Background**

Plaintiff applied for DIB on December 22, 2014, and SSI on January 9, 2015, both times initially alleging disability as of December 5, 2013.  Tr.[1] at 416-25.  Plaintiff's claims were denied initially and upon reconsideration.  Id. at 15.  She appeared and testified at a subsequent hearing before an ALJ on June 9, 2017.  Id. at 96-140, 223-28.  At Plaintiff's request, the ALJ amended the alleged disability onset date to June 9, 2014—the date of her 50th birthday.  Id. at 89, 599.  Thereafter, on December 4, 2017, the ALJ issued a decision finding Plaintiff not disabled.  Id. at 193-207.

Upon receipt of the unfavorable decision, Plaintiff's counsel submitted a letter to the ALJ's office

---

[1] "Tr." refers to the certified record of the administrative proceedings.  ECF No. 6.

alleging that he received a call from the ALJ's staff "offering to issue a Fully Favorable Decision" (id. at 600) if Plaintiff amended her onset date from December 5, 2013, to June 9, 2014. Id. at 15. Despite Plaintiff's counsel's representations, however, there was no record of the alleged call, no staff member recalled making any such call, and the ALJ never authorized or requested the alleged call. Id. Nevertheless, "[b]ecause of the unfortunate confusion caused by this alleged phone call," the ALJ found good cause to vacate his unfavorable decision and rescheduled a full hearing for January 24, 2018. Id. at 46-68. Following that hearing, he issued another decision finding Plaintiff not disabled on February 7, 2018. Id. at 15-27. Plaintiff subsequently appealed to the Appeals Council, which affirmed the ALJ's findings. Id. at 1-5. Plaintiff then commenced this action on April 26, 2019. (ECF No. 1).

### B. Factual Background

Plaintiff is an adult female born on June 9, 1964. Tr. at 416. She stopped formal schooling in the 11th grade. Id. at 111. She has two adult children and is not married. Id. at 106. Within the past twenty years, Plaintiff has worked as a housekeeper, security guard, parts picker, cashier, cleaner, hostess, and babysitter. Id. at 99, 124-27, 498-505. She has not worked since 2014 and is currently on food stamps. Id. at 111, 498.

Plaintiff suffers from degenerative disc disease of the lumbar spine, osteopenia, osteoarthritis, chronic obstructive pulmonary disease ("COPD"), and major depressive disorder. Id. at 18. Plaintiff also allegedly suffers from high cholesterol, hypertension, and carpal tunnel syndrome; however, the ALJ found that "the record does not show any significant symptoms or limitations stemming from these conditions." Id. Although Plaintiff testified that she "quit smoking," she still smokes about a cigarette a day. Id. at 110. Plaintiff's current treatment includes a variety of medications, once a month psychiatric visits, use of an asthma pump, an occasional median nerve injection in her left wrist to relieve pain, and the use of wrist splints and a cane (more invasive treatments like surgery have never been suggested). Id. at 15-28, 110-13.

Plaintiff currently lives on the ground floor of a two-story home. Id. at 107. She occasionally cooks, cleans, and does laundry with the assistance of her daughter. Id. at 115-17. She has trouble

standing and sitting for extended periods. Id. at 115. When asked "how do you feel?" Plaintiff testified that "I'm not happy," but when asked why, she responded "I don't know." Id. at 114. She enjoys watching television, using Facebook, occasionally socializing with her daughters and neighbors, and walking to church once a week (about a block and a half away from her home). Id. at 108-09, 115-17. Whenever she goes walking, someone always accompanies her. Id. at 22.

### III. LEGAL STANDARD

#### A. Standard of Review

This Court has jurisdiction to review the Defendant's decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court is not "permitted to re-weigh the evidence or impose [its] own factual determinations," but must give deference to the administrative findings. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *see also* 42 U.S.C. § 405(g). Nevertheless, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and supported by substantial evidence. *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (citations omitted).

Substantial evidence is "more than a mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Rather, it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Daniels v. Astrue*, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). In other words, under this deferential standard of review, the Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)).

**B. Determining Disability**

Under the SSA, to be eligible for benefits (both DIB and SSI), a plaintiff must show that he or she is disabled by demonstrating an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Taking into account the plaintiff's age, education, and work experience, disability will be evaluated by the plaintiff's ability to engage in his or her previous work or any other form of substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). A person is disabled for these purposes only if his or her physical or mental impairments are "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B). Decisions regarding potential disability will be made individually and will be "based on evidence adduced at a hearing." *Sykes v Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citing *Heckler v. Campbell*, 461 U.S. 458, 467 (1983)). Congress has established the type of evidence necessary to prove the existence of a disabling impairment by defining a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

**C. Sequential Evaluation Process**

The Social Security Administration follows a five-step, sequential evaluation to determine whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the plaintiff is currently engaged in gainful activity. *Sykes*, 228 F.3d at 262. Second, if plaintiff is not, the ALJ determines whether the Plaintiff has an impairment that limits his or her ability to work. *Id.* Third, if plaintiff has such an impairment, the ALJ considers

the medical evidence to determine whether the impairment is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). If it is, this results in a presumption of disability. *Sykes*, 228 F.3d at 262. If the impairment is not in the Listings, the ALJ must determine how much residual functional capacity ("RFC") the applicant retains in spite of his or her impairment. *Id.* at 263. Fourth, the ALJ must consider whether the plaintiff's RFC is enough to perform his or her past relevant work. *Id.* Fifth, if plaintiff's RFC is not enough, the ALJ must determine whether there is other work in the national economy the plaintiff can perform. *Id.*

The evaluation continues through each step unless it is determined at any point the plaintiff is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The plaintiff bears the burden of proof at steps one, two, and four, upon which the burden shifts to the Commissioner at step five. *Sykes*, 228 F.3d at 263. Neither party bears the burden at step three. *Id.* at 263 n.2.

## IV.   DISCUSSION

### A. Summary of the ALJ's Findings

At step one, the ALJ found that Plaintiff met the insured status requirements under the SSA on her date last insured, December 31, 2018, and that Plaintiff has not engaged in substantial gainful activity since June 9, 2014. Tr. at 18. At step two, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, osteopenia, osteoarthritis, COPD, and major depressive disorder. Id. Plaintiff's other alleged impairments—high cholesterol, hypertension, and carpal tunnel syndrome—were determined to be non-severe.[2] Id.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listings. Id. at 19. Prior to step four, the ALJ concluded that Plaintiff had the RFC to perform light work with a few additional limitations. Id. at 21; *see also* 20 C.F.R. §§ 404.1567(b), 416.967(b). He also concluded that Plaintiff should be limited to simple routine tasks in a low-stress job (with occasional decision-making) that

---

[2] Plaintiff only challenges the ALJ's non-severe finding regarding carpal tunnel syndrome.

may require occasional interaction with others. Tr. at 21. At steps four and five, the ALJ determined that Plaintiff was incapable of resuming her former occupations, but that jobs exist in significant numbers in the national economy that she can perform. Id. at 24-25. Accordingly, the ALJ concluded that Plaintiff was not disabled under the SSA throughout the period alleged. Id. at 26.

### B. Analysis

Plaintiff contends that: (1) the ALJ erred in finding that Plaintiff's carpal tunnel syndrome was a non-severe impairment; (2) the ALJ erred in finding that no impairment—singly or in combination—met or medically equaled a Listing; and (3) the ALJ did not afford sufficient weight to certain medical opinion evidence. *See* ECF No. 12 at 11-12. The Court will consider each argument in turn.

#### 1. Carpal Tunnel Syndrome

##### i. Non-severity Finding

Plaintiff argues that the ALJ erred at step two by finding that her carpal tunnel syndrome was not severe. Id. at 12-22. The Court disagrees.

"The step-two inquiry is a *de minimis* screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003). An impairment (or combination of impairments) will not be severe if the evidence establishes a "slight abnormality" with "no more than a minimal effect on an individual's ability to work." SSR 85-28. "Only those claimants with slight abnormalities that do not significantly limit any 'basic work activity' can be denied benefits [at step two] without undertaking the vocational analysis." *Bowen v. Yuckert*, 482 U.S. 137, 158 (1987) (O'Connor, J., concurring); *see also* 20 C.F.R. §§ 404.1520(c), 404.1522, 416.920(c), 416.922.

At step two, the ALJ explained that while the record contained evidence of carpal tunnel syndrome, the "clinical signs and findings have been quite minimal" and "largely normal." Id. at 18. Specifically, the ALJ observed that while nerve conduction testing done by Plaintiff's neurologist Dr. Ravi Tikoo on March 20, 2014, presented signs of carpal tunnel syndrome, Tr. at 18, 618, 620, 1064-68, the neurological examinations conducted by Dr. Tikoo since 2014 have not revealed abnormalities with the fingers or hands, Id. at 18, 611-15, 622-89, 901-61, 993-1008, 1033-61. Similarly, an examination conducted by

medical examiner Dr. Justin Fernando in September 2016 further indicated that Plaintiff possessed normal morphology of the fingers and hands, full bilateral grip and pinch strength, normal joint movements in all fingers, full range of motion in wrists, and no evidence of muscle atrophy or entrapment neuropathies. Id. at 18, 833-36. In addition, although Plaintiff's physician Dr. Tadeusz Majchrzak found positive Tinel's and Phalen's signs—a tingling sensation that results from a light tap over an affected neve—in April 2015 (id. at 710), no similar findings were made by him in August and October 2016, Id. at 18, 771, 963. All of these records were cited by the ALJ in support of his conclusion that Plaintiff's carpal tunnel syndrome was not severe, and Plaintiff does not identify any other relevant evidence that the ALJ failed to consider at step two. *See* id. at 18. Accordingly, the ALJ's non-severe determination is grounded in substantial evidence.[3]

      ii.    <u>Compatibility of Non-severity Finding and RFC Assessment</u>

Plaintiff next appears to contend that the ALJ's step two non-severity finding is incompatible with the RFC assessment that Plaintiff can perform certain "light work" that requires her to "'frequently (no more than 2/3 of the workday) reach, handle, finger and feel.'" ECF No. 12 at 19-22. According to Plaintiff, if she "cannot use her hands [for 1/3 of the workday,] she suffers a severe impairment to those hands and there cannot be serious doubt about that." Id. at 20, 22. Plaintiff's contentions are unavailing. As an initial matter, Plaintiff cites to no authority in support of her position. Moreover, it is well-established that even non-severe impairments may affect the RFC assessment. *See Sardina-Garcia v. Saul*, No. 19-1528, 2020 WL 5797949, at *1 (W.D. Pa. Sept. 28, 2020) ("Of course, even if an impairment is non-severe, it may still affect a claimant's RFC. In assessing a claimant's RFC, the ALJ must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe. SSR 96-8p, 1996 WL 374184 (S.S.A.), at *5 (July 2, 1996).") (internal quotation marks omitted). Here, it is clear that the ALJ accounted

---

[3] Furthermore, even if the Court were to accept Plaintiff's assertion that the ALJ improperly failed to find that carpal tunnel syndrome constituted a severe impairment at step two, the Third Circuit has explained that such finding should nevertheless be affirmed. *See Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) ("Because the ALJ found in Salles's favor at Step Two, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless.").

for any limitations resulting from Plaintiff's carpal tunnel syndrome in his RFC analysis because the RFC assessment only requires Plaintiff to use her hands for a portion of the workday. Plaintiff fails to support her position that the mere fact that an impairment affects the RFC renders that impairment severe. The Court therefore sees no reason to disturb the ALJ's findings.

  iii.  <u>Consideration of Carpal Tunnel Syndrome at Subsequent Steps</u>

To the extent Plaintiff asserts that the ALJ failed to consider her carpal tunnel syndrome at any other step after step two, the Court rejects those arguments as well.

At the end of his step two analysis, the ALJ explicitly stated that he considers "the functional limitations resulting from all of the claimant's medically determinable impairments—including those that are non-severe" in the RFC analysis. Tr. at 18. Later in his opinion, he mentioned Plaintiff's subjective complaint that she claims to have "no power in her hands." Id. at 22. He also reiterated that although nerve conduction studies showed evidence of neuropathy, there was no evidence of lumbar or cervical radiculopathy. Id. at 22, 614, 622-23, 1064. Though the ALJ does not explicitly mention Plaintiff's use of wrist braces and injections, he cited to parts of the record that do (id. at 22, 614) while also stating that he based his RFC analysis on, among other things, "the conservative degree of treatment," Id. at 25.

In addition, contrary to Plaintiff's allegation that the ALJ rejected the electromyography ("EMG") (ECF No. 12 at 18), the record indicates that he explicitly referenced "[n]erve conduction studies," while citing to the same pages in the transcript that Plaintiff cites, Tr. at 22 (citing id. at 613, 621-22, 1063). The ALJ's repeated reference to the effects stemming from Plaintiff's carpal tunnel syndrome demonstrates to the Court that those effects were considered by the ALJ at this stage of his analysis. *See Padilla v. Comm'r of Soc. Sec.*, 2015 WL 1006262, at *9 n.10 (D.N.J. Mar. 6, 2015). Since the ALJ sufficiently considered these effects on the record (*e.g.*, no power in hands, Plaintiff's use of wrist braces and injections, the EMG), the Court is satisfied that his analysis is grounded in substantial evidence.

 **2. Combination of Impairments Met or Medically Equaled a Listed Impairment**

Plaintiff next argues that the ALJ failed to consider the combined effect of her impairments at step three. ECF No. 12 at 22-31. The Court disagrees.

The Third Circuit has explained that while an ALJ must "set forth the reasons for his decision," *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000), the ALJ is not required to "use particular language or adhere to a particular format," *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). When an ALJ's decision, "read as a whole," sufficiently supports a finding, the ALJ does not need to repeat every fact and symptom at step three. *See Jones*, 364 F.3d at 505. Rather, the decision need only contain a "sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505 (citing *Burnett*, 220 F.3d at 120); *see also Morrison ex rel. Morrison v. Comm'r of Soc. Sec.*, 268 F. App'x 186, 189 (3d Cir. 2008) (noting that when an ALJ explicitly states that he has considered the impairments in combination, and it is clear from his analysis he has sufficiently probed the record, "[w]e see no reason not to believe him"). The claimant bears the burden to "present medical findings equal in severity to all the criteria for the one most similar [L]isted impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990).

    i.    <u>Physical Impairments</u>

The Court is satisfied with the ALJ's detailed discussion of whether Plaintiff's impairments, or combination of impairments, met or medically equaled a listed impairment. *See* Tr. at 19. With respect to Plaintiff's physical impairments, the ALJ stated that they did not meet, or medically equal, any of the listed impairments described in Appendix 1 of the regulations. Id. As stated previously, the ALJ determined—through the evidence in the record—that Plaintiff had the following severe physical impairments: degenerative disc disease of the lumbar spine, osteopenia, osteoarthritis, and COPD. Id. at 18. Accordingly, he identified and assessed the physical impairments under Listings 1.02, 1.04, 3.02 and/or 3.03 because those Listings most closely address the symptoms underlying Plaintiff's impairments. Id. at 19.

Listing 1.02 is concerned with major dysfunction of joint(s); to meet it, the ALJ must see sufficient evidence of "chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s)." 20 C.F.R. Part 404, Subpart P, Appendix 1, 1.02. The ALJ noted that there was "no evidence of Plaintiff's inability to ambulate or perform fine and gross

movements" and that the record indicated a "normal gait" and "full use of the hands and fingers."[4] Id. at 19. For support, the ALJ cited to Dr. Tikoo's neurological examination and Dr. Fernando's examination. Id. Dr. Tikoo's neurological examination explicitly stated that "patient's gait was normal-based and she performed heel, toe, and tandem walking normally." Id. at 614. Dr. Fernando also concluded that "[g]ross limitation of range of motion was not identified," and that "[j]oint movements are completely normal in all the joints of the fingers including the thumbs." Id. at 833-34. Additionally, Plaintiff points to no evidence supporting that her impairments in combination might have satisfied this Listing. *See Zebley*, 493 U.S. at 531.

Listing 1.04 is concerned with disorders of the spine. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, 1.04. Here, the ALJ explicitly stated that "the record does not show any evidence of motor loss, muscle atrophy or weakness, sensory or reflex loss, or a positive straight leg raising test . . . [and] there is no evidence of spinal arachnoiditis or lumbar spinal stenosis." Tr. at 19 (citing 1.04 (identifying these symptoms as necessary to find this Listing satisfied)). To support this conclusion, the ALJ cites to the same examinations identified above which established that Plaintiff had normal neurological findings and a normal gait. Id. Again, Plaintiff points to no other evidence to support the proposition that her impairments in combination might have satisfied this Listing. *See Zebley*, 493 U.S. at 531.

Finally, 3.03 and/or 3.04 is concerned with asthma and cystic fibrosis, respectively. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, 3.03-3.04. In finding that Plaintiff's COPD did not meet, or medically equal, these Listings, the ALJ stated that "the record does not show FEV1 or FVC[5] values meeting those set forth in the listings, nor is there evidence of chronic impairment of gas exchange, oxygen and carbon dioxide levels meeting those set forth in the listings." Tr. at 19. To support this conclusion, he cited portions of the record that plainly demonstrate that Plaintiff's FEV1 and FVC values did not meet those required by the Listings. Id. at 750, 770-72, 778. Further, there is also no evidence

---

[4] The Court notes that at one of her hearings, Plaintiff appeared without a cane. Tr. at 107-08.

[5] FVC stands for "expiratory forced vital capacity," while FEV1 stands for "forced expiratory volume in one second."

10

that Plaintiff ever had a COPD-related hospitalization or "or other emergent treatment for breathing difficulties." Id. at 19. In conclusion, since the ALJ need not "use particular language or adhere to a particular format," the Court is satisfied that his analysis here contained a "sufficient development of the record and explanation of findings to permit meaningful review." *See Jones*, 364 F.3d at 505. The severity of the impairments was derived from the record; thus, by explicitly citing to the record, the Court is convinced that the ALJ conducted a proper "combination" analysis and assessed each Listing considering all the pertinent impairments.

    ii.    <u>Mental Impairments</u>

Plaintiff next argues that the findings of Defendant's medical examiners that determined she had marked limitations should control the step three analysis, rather than those of certain treating physicians or the state agency consultants. ECF No. 12 at 27-31.

Though the reports from Dr. Arrington and Dr. Iturmendi (medical examiners who Plaintiff saw once each for an exam) did reveal some mental difficulties, they were fundamentally at odds with the exams done at the JCMC—where Plaintiff has been attending for years. While the medical examiners both found difficulties with mental status testing, such as difficulty with spelling, Tr. at 19, 712-14, 826-28, the ALJ explained that mental examinations conducted at the JCMC around the same time have "routinely been within normal limits, including an average ability to understand instructions, intact memory, and average intellectual functioning," Id. at 19, 721-23, 730-40, 878-80. The state agency consultants who reviewed Plaintiff's medical records observed that while she suffered mental limitations, none rose past the moderate level. Id. at 24, 148, 172-74. Ultimately, after weighing the evidence and deciding to give greater weight to the multiple examinations performed at the JCMC, the ALJ determined that Plaintiff had no more than moderate limitations in any category, falling short of satisfying 12.04, which concerns depressive, bipolar, and related disorders. Id. at 19-24; *see Kerdman v. Comm'r of Soc. Sec.*, 607 F. App'x 141, 144 (3d Cir. 2015) (noting that while an "ALJ must not reject evidence for no reason or for the wrong reason," he "may choose whom to credit when considering conflicting evidence") (internal citation and quotation marks omitted). Substantial evidence supports this decision, and it will

not be disturbed. *See Chandler*, 667 F.3d at 359.

### 3. Weight Accorded to Medical Opinion Evidence

Finally, Plaintiff contends that the ALJ failed to assign sufficient weight to certain medical opinion evidence in the RFC assessment. ECF No. 12 at 34-39.

As the primary factfinder, it is the ALJ's duty to weigh the evidence and resolve any conflicts in the record. *See Chandler*, 667 F.3d at 359. As noted above, while the ALJ cannot "reject evidence for no reason or for the wrong reason," he nevertheless can "choose whom to credit when considering conflicting evidence." *Kerdman*, 607 F. App'x at 144 (internal citation and quotation marks omitted). Consequently, "even if there is contrary evidence in the record that would justify the opposite conclusion, the ALJ's decision will be upheld if it is supported by substantial evidence in the record." *Chayu v. Berryhill*, No. 17-9043, 2019 WL 3887125, at *4 (D.N.J. Aug. 19, 2019) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)).

Here, the ALJ determined that the medical examiners—Dr. Iturmendi and Dr. Arrington—whom Plaintiff saw once each, were entitled to little weight because their opinions were inconsistent with the many normal treatment records from the JCMC, where Plaintiff frequently visited. Tr. at 24, 712-15, 721-23, 730-40, 826-28, 878-80. The ALJ explained that he assigned Dr. Fernando's opinion limiting Plaintiff to sedentary work little weight because it was primarily based on Plaintiff's subjective complaints. Id. at 24, 832-44. The ALJ further noted that the opinion was inconsistent with Dr. Fernando's objective examination, Dr. Tikoo's findings, and medical imaging. Id. 24. By contrast, the ALJ explained that because the state consultants' findings were consistent with the record, they were assigned greater weight. Id. at 24.

The only opinion by a treating physician assigned little weight was Dr. Majchrzak's. While the "opinions of a claimant's treating physician are entitled to substantial and at times even controlling weight," *Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001) (citing *Cotter*, 642 F.2d at 704), the treating physician's opinion is entitled to this deference only when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial

evidence in [the claimant's] case record," 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Here, Dr. Majchrzak stated that Plaintiff "is not candidate [sic] for any work most likely indefinite" and that she is "supposed to be on the total disability." Id. at 772, 964. However, the ALJ found that none of the clinical findings, medical imaging, treatments, nor Plaintiff's ability to independently function supported Dr. Majchrzak's opinion. Id. at 24, 614, 630, 635, 640, 645, 651-52, 658, 669, 675-76, 682, 688, 833-36, 905, 912, 919, 927, 936-37, 943, 952, 960, 998, 1008, 1040, 1049, 1060. The ALJ indicated that he assigned little weight to Dr. Majchrzak's opinion because it consisted of conclusory statements that were contrary to the record. *See Coleman*, 494 F. App'x at 254; *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The ALJ determined that the opinions that were *more* consistent with the entirety of the record (*i.e.*, physical examinations, medical imaging, treatments, etc.) should be entitled to greater weight. Furthermore, Plaintiff has not identified any other evidence as being rejected for the wrong reasons. On this record, the Court is satisfied that the ALJ's findings are supported by substantial evidence. *See Coleman*, 494 F. App'x at 254.

## V.     CONCLUSION

For the foregoing reasons, the Court will **AFFIRM** the ALJ's decision. An appropriate Order accompanies this Opinion.

DATED: January 27, 2021

**CLAIRE C. CECCHI, U.S.D.J.**